No. 05-259

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 24

_____

CITY OF BILLINGS,

        Plaintiff and Respondent,

   v.

AMBER GONZALES, MICHAEL CRISTAN,
CARRIE BLACK, CARA LUDWIG, and WILLIAM
GRUSSING,

        Defendant and Appellants,

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and for the County of Yellowstone, Cause Nos. DC 04-753, DC 04-754,
                    DC 04-757, DC 04-846, DC 04-847
                    The Honorable Ingrid Gustafson, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Josh Mirel, City of Billings Public Defenders Office, Billings, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Brenda Nordlund, Assistant
            Attorney General, Helena, Montana

            Brent Brooks, Billings City Attorney; Curtis L. Bevolden, Deputy City
            Attorney, Billings, Montana

_____

                    Submitted on Briefs:  January 5, 2006
                               Decided:  January 31, 2006

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Amber Gonzales, Michael Cristan, Carrie Black, Cara Ludwig, and William Grussing (hereafter collectively "the drivers") appeal from the decision of the District Court for the Thirteenth Judicial District, Yellowstone County, denying their motions to dismiss their convictions for driving while license suspended or revoked pursuant to § 61-5-212, MCA. We reverse and remand.

¶2    The drivers' appeal presents the sole issue of whether a person may be convicted of driving while license suspended or revoked under § 61-5-212, MCA, without having possessed or possessed in recent years a valid Montana driver's license or other statutorily granted privilege to drive.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    At some point preceding the present charges, the State had "suspended" or "revoked" the drivers' privilege to drive pursuant to various provisions of Title 61. None of the drivers possessed valid Montana licenses at the time that the State purportedly suspended or revoked their privileges. With one exception, Cristan, none had ever possessed a valid Montana license. Cristan had let his Montana license lapse approximately 20 years before this latest incident. He never had reapplied for a license.

¶4    At various times in 2003 and 2004, law enforcement officers stopped each of the drivers following traffic violations and cited them for driving while license suspended or revoked pursuant to § 61-5-212, MCA. None of the drivers possessed a valid Montana driver's license at the time law enforcement officials issued the respective citations.

¶5    The drivers filed motions to dismiss in Billings Municipal Court, arguing that they could not be charged with driving while license suspended or revoked because they did

2

not possess a valid driver's license or other privilege to drive. The court denied the motions. The drivers entered nolo contendere pleas and reserved the right to appeal. The drivers appealed their convictions to the District Court for the Thirteenth Judicial District, Yellowstone County. The drivers also moved to consolidate their cases on appeal. The District Court consolidated the cases and affirmed the Municipal Court's denial of their motions to dismiss. This appeal followed.

## STANDARD OF REVIEW

¶6     The denial of a motion to dismiss in a criminal case presents a question of law. *State v. Mallak*, 2005 MT 49, ¶ 13, 326 Mont. 165, ¶ 13, 109 P.3d 209, ¶ 13. We conduct plenary review of a district court's conclusions of law to determine whether the court's conclusions are correct as a matter of law. *In re Conservatorship of Kloss*, 2005 MT 39, ¶ 7, 326 Mont. 117, ¶ 7, 109 P.3d 205, ¶ 7.

## DISCUSSION

¶7     Section 61-5-212, MCA, provides, in part, that a person "commits the offense of driving a motor vehicle during a suspension or revocation period if the person drives . . . a motor vehicle on any public highway of this state at a time when the person's privilege to do so is suspended or revoked in this state or any other state . . . ." The drivers argue that the State first must have granted a person the privilege to drive, either through a driver's license or other statutorily authorized means, for the State to charge them under § 61-5-212, MCA. The State maintains that the privilege to drive "encompasses the act of an individual--independent of any prerequisite grant secured by law or otherwise--to simply enjoy, or have the benefit" of driving.

3

¶8     When interpreting a statute, we seek to implement the objectives the legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls. *Kloss*, ¶ 10.  It is blackletter law that in the construction of a statute, the office of a judge is simply to ascertain and declare what is in terms or in substance contained therein, not to omit what has been inserted or insert what has been omitted.  Section 1-2-101, MCA.

¶9     Section 61-1-101(16), MCA, defines "driver's license" as "a license or permit to operate a motor vehicle issued under or granted by the laws of this state, including . . . the privilege of any person to drive a motor vehicle, whether or not the person holds a valid license . . . ."  Section 61-5-102, MCA, provides, in part, that "[e]xcept as provided in 61-5-104, a person may not drive a motor vehicle upon a highway in this state unless the person has a valid Montana driver's license."

¶10    Section 61-5-104, MCA, lists persons who are exempt from licensure requirements.  For example, this provision exempts from licensure requirements "a person who is a member of the armed forces of the United States while operating a motor vehicle owned by or leased to the United States government and being operated on official business."  Section 61-5-104(1)(a), MCA.  Similarly, this provision also exempts "a person who temporarily drives, operates, or moves a road machine, farm tractor . . . or implement of husbandry for use in intrastate commerce on a highway. . . ."  Section 61-5-104(1)(d), MCA.

¶11    "The ability to drive a motor vehicle on a public highway is not a fundamental right; it is a revocable privilege that is granted upon compliance with statutory licensing procedures."  *State v. Skurdal*, 235 Mont. 291, 295, 767 P.2d 304, 307.  The relevant

4

licensing procedures require a person to hold a valid Montana driver's license to drive a motor vehicle unless they qualify for a statutory exemption. Sections 61-5-102 and -104, MCA. Moreover, the legislature included the privilege to drive in its definition of "driver's license," and requires that such a license be "issued under or granted by the laws of this state . . . ." Section 61-1-101(16), MCA. The plain reading of these statutes, taken together, demonstrates that the State must grant a person the privilege to drive. The legislature limited the privilege to drive, absent a valid driver's license, to those instances identified in § 61-5-104, MCA.

¶12 We recognize that the definition of "driver's license" includes "the privilege of any person to drive," regardless of whether the person possesses a driver's license. Section 61-1-101(16), MCA. We also recognize, however, that Title 61 uses the terms in the disjunctive. For example, the department of justice may not issue a driver's license to a person "whose *license or driving privilege* is currently suspended, revoked, or canceled . . . ." Section 61-5-105(2), MCA (emphasis added). The State asserts that requiring the privilege to drive to stem from a positive grant of authority by the State ignores this distinction. We disagree. The distinction throughout Title 61 between "license" or "driving privilege" instead demonstrates that individuals lawfully can drive in Montana either by obtaining a driver's license pursuant to § 61-5-102, MCA, or by establishing that they have a privilege to drive without a license pursuant to § 61-5-104, MCA.

¶13 The plain language of § 61-5-212, MCA, requires that a person possess a privilege to drive before that privilege can be suspended or revoked. We have determined that the privilege to drive must be granted by law. Therefore, absent a license or privilege to drive without a license pursuant to § 61-5-104, MCA, the State cannot convict a person

5

under § 61-5-212, MCA, with driving while license suspended or revoked. Adopting the State's position would require this Court to enlarge the phrase "suspended or revoked" of § 61-5-212, MCA, to include a driving privilege never granted. It is not the role of this Court to insert what has been omitted when applying statutes. Section 1-2-101, MCA.

¶14 Other jurisdictions have reached similar results. For instance, the Kansas Supreme Court, when interpreting substantially similar statutory language, concluded that Kansas granted the privilege to drive only to persons with a valid driver's license or those statutorily exempt from the licensure requirement. *State v. Bowie* (Kan. 2000), 999 P.2d 947, 951. Thus, the court concluded that a person who never obtained a license or failed to qualify for an exemption could not be charged with driving while their privilege was cancelled, suspended, or revoked. *Bowie*, 999 P.2d at 952. The Court of Appeals of Alaska likewise concluded that the "privilege to drive" derived from a legal authorization to drive, even though the definition of "license to operate a motor vehicle" included the "privilege to drive" regardless of whether the person held a valid license. *Francis v. Municipality of Anchorage* (Alaska Ct. App. 1982) 641 P.2d 226, 227. The court determined that in the absence of a prior legal authorization, such as a valid driver's license or a statutory exemption from licensure requirements, a person could not be charged with driving while their license was suspended. *Francis*, 641 P.2d at 228.

¶15 Our decision does not leave the State without recourse when dealing with unlicensed drivers. The State could have charged the drivers here with driving without a license under § 61-5-307, MCA. The State argues that the harsher penalty under § 61-5-212, MCA, would favor unfairly drivers who have never bothered to obtain a license over those who have taken the trouble to obtain a license or who have qualified for a statutory

6

privilege and subsequently had that privilege suspended or revoked. Both sections, however, provide for the same maximum penalty. A mandatory two-day detention imposed under § 61-5-212, MCA, represents the only distinction in the sentencing. Despite this discrepancy, we must be guided by giving effect to the legislative intent of the statutes. *Kloss*, ¶ 10. A reasonable and sensible interpretation of the relevant statutory scheme leads us to conclude that a person who does not have a privilege to drive, either through a driver's license or statutory licensure exemption, cannot be charged with driving while their privilege has been suspended or revoked under § 61-5-212, MCA.

¶16 We therefore reverse and remand with instructions to the District Court to vacate the drivers' convictions.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE