JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Dennis McGowan (McGowan) appeals his conviction from the First Judicial District, Lewis and Clark County, for operating a motor vehicle with an alcohol concentration in excess of .08 in violation of § 61-8-406, MCA. We affirm.
¶2 McGowan’s appeal presents the following issue:
¶3 Whether the State presented sufficient evidence to support the jury’s conviction of McGowan for the offense of driving a noncommercial vehicle with an alcohol concentration in excess of .08.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Helena Police Officer Gary Herbst (Officer Herbst) pulled McGowan over at approximately 11:50 p.m. on October 20, 2003, for traveling 40 miles per hour in a 30 mile per hour zone. Officer Herbst detected an odor of alcohol coming from inside the vehicle while speaking with McGowan. He further noticed that McGowan moved slowly and deliberately and that he slurred his speech slightly. Officer Herbst suspected McGowan of driving under the influence of alcohol and accordingly initiated a DUI investigation.
¶5 Officer Herbst asked McGowan whether he had consumed any alcohol that night. McGowan admitted that he had consumed approximately five beers. Officer Herbst then administered two physical field tests. McGowan failed both the walk and turn test and the one-legged stand test. McGowan agreed to take a portable breath test. The portable breath test indicated the presence of alcohol in McGowan’s system. Officer Herbst arrested McGowan for driving under the influence of alcohol based on the results of the physical field tests and the portable breath test.
¶6 Officer Herbst transported McGowan to the detention center and *492 read him the implied consent law. McGowan consented to a breath test on the Intoxilyzer 5000. Officer Herbst observed McGowan for the mandatory 15 minute deprivation period and administered the test at approximately 12:40 a.m., roughly 50 minutes after he first stopped McGowan. The Intoxilyzer 5000 indicated that McGowan’s breath alcohol concentration was .092. Officer Herbst read McGowan his Miranda rights and McGowan then stated that he felt he was under the influence of alcohol.
¶7 The State charged McGowan with driving while under the influence of alcohol (DUI), in violation of § 61-8-401, MCA, driving with an alcohol concentration of .08 or more (DUI Per Se), in violation of § 61-8-406, MCA, and speeding, in violation of § 61-8-303, MCA. The Helena City Court convicted McGowan of speeding and DUI Per Se following a bench trial on November 18, 2004. McGowan appealed for a trial de novo in district court. The District Court held a jury trial on March 14, 2005. McGowan moved for a judgment of acquittal at the close of the State’s case, arguing that the State had not proven beyond a reasonable doubt that his alcohol concentration was .08 or more at the time he was driving. The District Court denied the motion. The jury found McGowan guilty of DUI Per Se. This appeal followed.
STANDARD OF REVIEW
¶8 We review a question on the sufficiency of the evidence to determine whether, in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Field, 2005 MT 181, ¶ 15, 328 Mont. 26, ¶ 15, 116 P.3d 813, ¶ 15.
DISCUSSION
¶9 McGowan contends that the DUI Per Se statute requires the State to prove that his alcohol concentration was above .08 while he was driving. He asserts that the results of the Intoxilyzer 5000 test taken 50 minutes after he was initially pulled over cannot prove what his alcohol concentration was at the time he was driving. The State counters that it presented sufficient evidence for a jury to find that McGowan’s alcohol concentration was in excess of .08 at the time of his stop.
¶10 Section 61-8-406, Montana’s DUI Per Se statute, provides that “it is unlawful... for any person to drive or be in actual physical control of... a noncommercial vehicle upon the ways of this state open to the public while the person’s alcohol concentration, as shown by analysis *493 of the person’s blood, breath, or urine, is 0.08 or more ....” Montana’s DUI statute provides, in part, that the concentration of alcohol in a person’s system may be determined by analysis of a sample of the person’s breath taken “within a reasonable time after the alleged act ....” Section 61-8-401(4), MCA. The DUI statute therefore explicitly allows for law enforcement to determine a person’s alcohol concentration a reasonable time after the alleged act, while the DUI Per Se statute refers only to a person’s alcohol concentration while they are driving.
¶11 McGowan argues that the DUI Per Se statute’s omission of “taken ■within a reasonable time after the alleged act” required law enforcement to determine his alcohol concentration at the time he was actually driving, rather than 50 minutes afterward. He notes that a person’s alcohol concentration continues to rise for an unknown period of time after they have stopped consuming alcohol, then plateaus and begins to decline. He maintains that his blood alcohol level could have been rising at the time Officer Herbst pulled him over. Accordingly, he argues that his alcohol concentration at the time he took the Intoxilyzer 5000 test could have been higher than it was 50 minutes earlier when he was driving. The State counters that we must read the DUI statutes together and conclude that the DUI Per Se statute allows evidence of alcohol concentration tests taken within a reasonable amount of time after the alleged act of driving with an alcohol concentration in excess of .08.
¶12 Section 61-8-404, MCA, outlines evidence that the State may admit against a person charged with DUI Per Se. That section provides, in part, that “evidence of any measured amount or detected presence of alcohol... in the person at the time of a test, as shown by an analysis of the person’s blood or breath, is admissible.” Section 61-8-404(1)(a), MCA.
¶13 Montana’s implied consent law provides that a person who operates or is in actual physical control of a vehicle upon the ways of the state open to the public effectively consents to a test of their blood or breath for the purpose of determining any measured amount or detected presence of alcohol in their body. Section 61-8-402(1), MCA. An officer must administer a test or tests when the officer has reasonable grounds to believe that the person has been driving under the influence of alcohol and has placed that person under arrest for a violation of § 61-8-401, MCA. Section 61-8-402(2)(a)(i), MCA. A preliminary alcohol screening test administered in the field used to estimate the person’s alcohol concentration does not satisfy a person’s *494 obligation to submit to a test under § 61-8-402, MCA. Section 61-8-409(2), MCA.
¶14 Therefore, if an officer has a particularized suspicion that a person has been operating a motor vehicle while under the influence of alcohol, the officer may administer a preliminary screening test to estimate the amount of alcohol in their system. Section 61-8-402, MCA. If the officer then determines to place the person under arrest for DUI, the officer must administer another blood or breath test to determine the amount of alcohol present in the person’s system pursuant to § 61-8-402(2)(a)(i), MCA. The test required by § 61-8-402, MCA, is not a field test. Rather, the officer must administer this second test at a location approved for the administration of such tests by the Montana State Crime Lab, such as a detention center. Rule 23.4.215, ARM. Administrative rules further require law enforcement officers to observe a person for a fifteen minute deprivation period before administering a test on the Intoxilyzer 5000. Rule 23.4.212(7), ARM; State v. Flaherty, 2005 MT 122, ¶ 9, 327 Mont. 168, ¶ 9, 112 P.3d 1033, ¶ 9.
¶15 We construe, interpret and apply the law so as to avoid absurd results. Prindel v. Ravalli Co., 2006 MT 62, ¶ 33, 331 Mont. 338, ¶ 33, 133 P.3d 165, ¶ 33. We presume that the legislature would not pass meaningless legislation and we seek to harmonize statutes relating to the same subject so as to give effect to each. Wild v. Fregein Construction, 2003 MT 115, ¶ 20, 315 Mont. 425, ¶ 20, 68 P.3d 855, ¶ 20. Moreover, statutory construction should not lead to absurd results if a reasonable interpretation would avoid it. Wild, ¶ 20.
¶16 The statutory scheme for DUI offenses allows for the admission of Intoxilyzer 5000 results in DUI Per Se cases. Section 61-8-404, MCA. Indeed, if a law enforcement officer believes that a person has been driving under the influence of alcohol and determines to place the person under arrest for DUI pursuant to § 61-8-401, MCA, the officer must administer a breath test, such as the Intoxilyzer 5000, at a detention center or other approved facility. Section 61-8-402(2)(a)(i), MCA; § 61-8-409(2), MCA; Rule 23.4.215, ARM. Further, an officer must observe the person for a fifteen minute deprivation period before administering the test. Flaherty, ¶ 9.
¶17 Reading § 61-8-406, MCA, to require law enforcement officers to determine a person’s alcohol concentration while driving would lead to an absurd result, as it would be impossible for an officer to administer a test while the suspect was driving. Proper procedure requires an officer to pull the person over, observe the person and *495 initiate a DUI investigation, determine to place a person under arrest based on the investigation, transport the person to a detention center or other approved testing facility, observe the person for the mandatory fifteen minute deprivation period, and then administer the breath test. Breath tests administered within a reasonable amount of time after the alleged act are therefore consistent with the DUI Per Se statute. Interpreting the DUI Per Se statute to allow for the admissibility of breath tests administered within a reasonable amount of time after the alleged act of driving while under the influence represents a reasonable interpretation of the statutory language, comports with the legislature’s intent, and avoids an absurd result. Wild, ¶ 20.
¶18 The Dissent argues that the State should be required to prove evidence of a person’s alcohol concentration at the time that they were driving through retrograde extrapolation evidence. Dissent, ¶ 31. Retrograde extrapolation represents the technique through which experts estimate alcohol concentration at some earlier time based on the test results at some later time. Douthitt v. Texas (Tex. App. 2004), 127 S.W.3d 327. The Dissent further points to cases from other jurisdictions that posit that tests taken after a person has been driving do not accurately reflect the person’s alcohol concentration while the person was driving. Dissent, ¶ 32.
¶19 At least one jurisdiction to which the Dissent cites, however, has changed course and now rejects the notion that the state needs to present retrograde extrapolation evidence to support convictions under DUI per se type statutes. In Com. v. Yarger (Pa. 1994), 648 A.2d 529, 531-32, the Supreme Court of Pennsylvania differentiated Jarman, the case cited by the Dissent, based upon Yarger’s higher alcohol concentration and the shorter duration of time between his initial stop and the administration of the breath test. Yarger, 648 A.2d at 531. The court went on to hold, however, that the Commonwealth was not required to present expert evidence relating a driver’s alcohol concentration back to the time he or she was driving to prove that a driver operated a vehicle with a blood alcohol content of 0.10% or greater. Yarger, 648 A.2d at 531. The court noted that the legislature amended the DUI per se statute after the commencement of Yarger’s case to allow for the admission of tests taken within three hours after the person was driving. Yarger, 648 A.2d at 531, n.2. The court did not premise its holding, however, upon this legislative revision. Yarger, 648 A.2d at 531-32.
¶20 And in Texas, although no court has yet to hold explicitly that the *496 state is not required to present retrograde extrapolation analysis testimony, several courts have admitted the results of alcohol concentration tests in the absence of such testimony. See, e.g., State v. Mechler (Tex. Crim. App. 2005), 153 S.W.3d 435; Stewart v. State (Tex. Crim. App. 2004), 129 S.W.3d 93. A number of other jurisdictions likewise have concluded that the state need not present retrograde extrapolation evidence to establish a person’s alcohol concentration at the time they were driving under DUI per se type statutes. See, e.g., State v. Greenwood (Tenn. Crim. App. 2003), 115 S.W.3d 527; Com. v. Wirth (Ky. 1996), 936 S.W.2d 78; Haas v. State (Fla. 1992), 597 So.2d 770; State v. Kubik (Neb. 1990), 456 N.W.2d 487; Ransford v. District of Columbia, (D.C. App. 1990), 583 A.2d 186; State v. Taylor (N.H. 1989), 566 A.2d 172; State v. Tischio (N.J. 1987), 527 A.2d 388; State v. Keller (Wash. App. 1983), 672 P.2d 412.
¶21 These jurisdictions recognize the impossible burden that requiring retrograde extrapolation evidence would place on the state. Retrograde extrapolation would require evidence that the state would rarely be able to acquire because of a defendant’s constitutional right to remain silent. Taylor, 566 A.2d at 175. Specifically, the state would need to ascertain information wholly within the defendant’s knowledge, such as when, and in what amounts, the defendant consumed alcohol before driving. Taylor, 566 A.2d at 175. Further, the rate of absorption of alcohol varies greatly among individuals, with studies indicating that a person reaches their peak blood alcohol level anywhere from 14 to 138 minutes after drinking. Taylor, 566 A.2d at 176. Additionally, the amount of food consumed by the defendant affects the rate of absorption. Taylor, 566 A.2d at 176. We therefore agree with other jurisdictions that have concluded that the legislature “could not have intended to place such impossible roadblocks in the way of the State in prosecuting [DUI per se] cases.” Taylor, 566 A.2d at 176.
¶22 We must determine whether, in a light most favorable to the prosecution, the State presented sufficient evidence to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Field, ¶ 15. Based on the results of the Intoxilyzer 5000, we conclude that the State presented the jury with sufficient evidence to determine that McGowan committed the offense of driving with an alcohol concentration above .08 in violation of § 61-8-406, MCA.
¶23 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES WARNER, LEAPHART and RICE concur.